UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **DONNY L. LESTER** | **CIVIL ACTION NO. 3:12-cv-3106** |
|     **LA. DOC #581175** | |
| **VS.** | **SECTION P** |
| | **JUDGE ROBERT G. JAMES** |
| **JACKSON PARISH CORRECTIONS** | |
| **CENTER, ET AL.** | **MAGISTRATE JUDGE KAREN L. HAYES** |

REPORT AND RECOMMENDATION

*Pro se* plaintiff Donny Lester, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on December 17, 2012.  When he filed his complaint, plaintiff was an inmate in the custody of the Louisiana Department of Corrections. He was incarcerated at the Jackson Parish Corrections Center (JPCC), Jonesboro, Louisiana, and he complained that JPCC refused to buy him a pair of glasses while he was confined there. On January 28, 2013, he notified the court that he was released from custody and residing at a residential address in Pineville.

He sued JPCC, Warden Billy Tigner, and Nurse Lara Freeman and prayed for compensatory damages and that Nurse Freeman's license as a Practical Nurse be revoked. Thereafter he advised that the JPCC staff were interfering with his legal mail – namely his application to proceed *in forma pauperis* – and he requested an injunction prohibiting such activity. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

*Background*

It is unclear how long plaintiff was incarcerated at the JPCC. On some unspecified date during his incarceration there he complained about some unspecified "eye problem" to the nurse, presumably, Nurse Freeman. Freeman offered to make an appointment for him for an eye examination; however, she cautioned him that JPCC would not pay for eye glasses if prescribed. Plaintiff does not state whether he was thereafter examined by an optometrist, but he claimed that he began experiencing migraine head aches and was given ibuprofen for the pain. He also claimed that his vision was so bad that he "... would run into tables, benches, racks, open lockers, and toilets."

On January 3, 2013, plaintiff claimed that staff at JPCC intercepted or interfered with his outgoing legal mail, specifically his applications to proceed *in forma pauperis* in this action and in another pending civil action in the Shreveport Division, Civil Action No. 5:12-cv-2938. He prayed for injunctive relief – an order directing JPCC's staff to cease such interference. [Doc. 7]

Plaintiff's allegations notwithstanding, the Court's records reveal that plaintiff submitted the appropriate documentation and in both cases has been allowed to proceed *in forma pauperis*. See Civil Action No. 5:12-cv-2938 at Docs. 5, 7, and 9, and in this Civil Action, Docs. 5 and 8.

On January 28, 2013, plaintiff advised that he had been released from custody.

*Law and Analysis*

*1. Screening*

Plaintiff is a prisoner seeking redress from an officer or employee of a governmental entity who has been permitted to proceed *in forma pauperis*. Accordingly, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d

578, 579-80 (5th Cir.1998) (per curiam). Since he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

      A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995).

      Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Neiztke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**2. *Medical Care***

      Plaintiff's complaint, read liberally, is that although JPCC offered to send him to a

3

physician or health care provider for his vision problems, the facility refused to pay for eye glasses should they be prescribed. Plaintiff thus implies that prisoners have an absolute right to totally free medical care. He is incorrect. Policies which require inmates to bear part of the cost of their medical treatment are constitutionally permissible so long as the policy or procedure does not interfere with timely and effective treatment of <u>serious medical needs</u>. *Reynolds v. Wagner*, 128 F.3d 166, 174 (3d Cir.1997) (co-pay policy); *Shapley v. Nevada Bd. of State Prison Comm's*, 766 F.2d 404 (9th Cir.1985) (co-pay policy); *Cameron v. Sarraf*, 2000 WL 33677584, at *3-5 (E.D.Va. March 17, 2000) (No. CIV.A.98-1227-AM.)(co-pay policy); *Reynolds v. Wagner*, 936 F.Supp. 1216, 1225-1227 (E.D.Pa.1996) (fee-for-service-program); *Johnson v. Dept. of Public Safety and Correctional Services*, 885 F.Supp. 817 (D.Md.1995) (co-pay policy). In other words, nothing in the United States Constitution guarantees inmates the right to be entirely free from costs associated with medical treatment. *Reynolds*, 128 F.3d, at 175.

It is only when necessary medical care is denied to impecunious inmates that the Eighth Amendment is implicated. See, e.g., *Collins v. Romer*, 962 F.2d 1508, 1514 (10th Cir.1992); *Johnson*, 885 F.Supp. at 820. Plaintiff has not established such a Constitutional violation. The constitutional right of a convicted prisoner to safe conditions of confinement and prompt and adequate medical care is based upon the Eighth Amendment's prohibition of cruel and unusual punishment. Rights guaranteed under the Eighth Amendment are violated only if the defendants act with deliberate indifference to a substantial risk of serious harm which results in injury. Deliberate indifference requires that the defendants have subjective knowledge of the risk of harm. Mere negligence or a failure to act reasonably is not enough. The defendants must have the subjective intent to cause harm. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50

L.Ed.2d 251 (1976).

Thus, in order to establish an actionable constitutional violation a plaintiff must allege facts tending to establish that the defendants were deliberately indifferent to his serious medical needs and safety. *Thompson v. Upshur County, Texas*, 245 F.3d 447, 457 (5th Cir.2001). A showing of deliberate indifference with regard to medical treatment requires the inmate to submit evidence that prison officials " 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.' " *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citation omitted). Plaintiff's pleadings fall far short of alleging facts sufficient to establish deliberate indifference on the part of any of the defendants identified in his pleadings. Under the deliberate indifferent standard, it is not sufficient that defendants should have known of a substantial risk; they must have actual knowledge of the risk and must thereafter have ignored it. In other words, a civil rights plaintiff must allege and prove that each of the defendants knew of and then disregarded an <u>excessive risk</u> of injury to him, and, that they were both aware of the facts from which the inference could be drawn that a <u>substantial risk of serious harm existed,</u> <u>and that they drew that</u> inference. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Plaintiff's claim that his headaches were related to his lack of eye glasses is conclusory at best and the harm he sustained as a result was *de minimis* at worse. Further, he was provided medication in an effort to alleviate his pain. Finally, plaintiff's claim that he was unable to see beds, toilets, racks and the like strains credulity.

In short, plaintiff's failure to allege and demonstrate deliberate indifference warrants

dismissal of his complaint as frivolous and for failing to state a claim for which relief may be granted.

### 3. Interference With Legal Mail – Request for Injunction

As noted above, plaintiff's claim that JPCC staff interfered with his legal mail is without any basis in fact. Plaintiff is in the process of litigating two civil actions in this Court and in both cases, contrary to his assertion, he has been permitted to file the necessary documentation to obtain *in forma pauperis* status.

Further, plaintiff is no longer incarcerated and therefore any claim for injunctive relief is moot. The transfer of a prisoner out of an allegedly offending institution generally render his claims for injunctive relief moot. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir.2001).

### *Conclusion and Recommendation*

Therefore,

Plaintiff's Motion for Injunctive Relief [Doc. 7] is **DENIED**; and,

**IT IS RECOMMENDED THAT** plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the**

...

proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, February 8, 2013.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE